**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **WESLEY MILLIKIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 10-CV-314-JHP-PJC |
| ) | |
| **CITY OF TULSA;** ) | |
| **DONALD B. PIERCE,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action. When he filed his complaint (Dkt. # 1), Plaintiff was a state inmate. He appears *pro se*. On February 16, 2011, Defendants filed a special report (Dkt. ## 22, 23). That same day, Defendant City of Tulsa filed an answer (Dkt. # 24), and Defendant Donald B. Pierce filed a motion to dismiss or, in the alternative, motion for qualified immunity (Dkt. # 25). Plaintiff filed a response (Dkt. # 29) to Defendant's dispositive motion. Defendant filed a reply (Dkt. # 31). On August 29, 2011, the Court notified the parties, pursuant to Fed R Civ. P. 12(d), that Defendant's motion would be adjudicated as a motion for summary judgment and not as a motion to dismiss(Dkt. # 32). The Court also notified the parties that, pursuant to Fed. R. Civ. P. 56(f), entry of summary judgment for the City of Tulsa, a nonmovant, would be entertained. See id. Plaintiff's copy of the Order entered August 29, 2011, was returned to the Clerk of Court, marked "return to sender." On September 12, 2011, Defendant City of Tulsa filed a supplement in support of summary judgment (Dkt. # 33) and provided notice that Plaintiff's apparent status as maintained by the Oklahoma Department of Corrections is "escapee." For the reasons discussed below, the Court finds Defendants are entitled to summary judgment.

## BACKGROUND

On December 14, 2009, Defendant Pierce and his K-9 partner were involved in a vehicle pursuit. Pierce observed the suspect, the driver of the vehicle being pursued, abandon the vehicle and attempt to escape arrest by retreating into a house. Upon entry to the house, Officer Pierce performed a protective sweep of the residence. He encountered a person, later identified as Plaintiff Wesley Millikin, hiding in the bathroom. Officer Pierce used his K-9 partner to subdue and arrest Plaintiff. A search of Plaintiff's person incident to his arrest revealed that he was in possession of drugs and drug paraphernalia.

As a result of those events, Plaintiff was charged, on December 18, 2009, in Tulsa County District Court, Case No. CF-2009-5920, with: 1) Unlawful Possession of a Controlled Drug with the Intent to Distribute; 2) Mistreating a Police Dog; and 3) Resisting an Officer. On August 20, 2010, Plaintiff waived his right to both a jury and non-jury trial, and pled guilty to a reduced charge in Count 1 of Possession of a Controlled Drug. Plaintiff also pled guilty to the charge of Resisting an Officer (Count 3). The charge of Mistreating a Police Dog (Count 2) was dismissed by the State. Dkt. # 23 at 1-10. Plaintiff was sentenced to four (4) years in custody of the Oklahoma Department of Corrections on Count 1 and to one (1) year in the Tulsa County Jail, with the sentences ordered to run concurrently. Id. at 8.

## PLAINTIFF'S ALLEGATIONS

In his civil rights complaint (Dkt. # 1), Plaintiff identifies two (2) defendants: Donald B. Pierce, a police officer for the City of Tulsa, and the City of Tulsa. He asserts four (4) claims: excessive use of force; unreasonable search and seizure; assault and battery; and conversion. The first two claims are asserted against both Defendants Pierce and the City of Tulsa, while the third

and fourth claims are asserted solely against Defendant Pierce. In his request for relief, Plaintiff asks for compensatory damages, punitive damages and "such other and further relief as may be appropriate whether or not specifically prayed, including but without limitation such orders for training, supervision, and discipline of officers as may be necessary to remedy the unconstitutional policies, practices, and procedures complained of herein." See Dkt. # 1. Plaintiff uses the following words to allege that:

- On or about December 14, 2009, Pierce entered a house rented by certain persons named (Scott) Cantrell.

- Pierce was chasing Rex Keltner, a person who had run from Pierce as he attempted a traffic stop for fictitious tags.

- Pierce entered the house arrested Keltner, and put him on the floor in handcuffs.

- Pierce then pushed the door of a bathroom open and found Plaintiff.

- Pierce then hit Plaintiff in the right side of the head with his pistol, causing serious injury including a busted eardrum and broken tooth, etc.

- Pierce then "sicced" his dog on Plaintiff, as Plaintiff peacefully protested that he had not fled and was not a suspect. The dog, named Petey, turned and looked at Pierce and Plaintiff, and then turned back and looked at Keltner.

- Pierce sicced the dog again. Petey turned briefly toward Plaintiff and Pierce, then turned back to Keltner.

- Pierce kicked Plaintiff and said "Ooooh!!" as if he was hurt. Pierce then "sicced" the dog again whereupon Petey attacked fiercely.

- Plaintiff went to the floor screaming and begging Pierce to call the dog off.

- Pierce kicked Plaintiff in the back and cracked his rib, screaming "Let go of the f***ing dog!!!"

- Plaintiff had grabbed the dog's snout to try to get him off his leg because of the pain.

3

- Plaintiff began to lose consciousness but continued to try to get the dog off. The dog chewed up both legs and the upper left arm of Plaintiff.

- Plaintiff went to the floor, trying to put his arms behind his back the whole time. Pierce was screaming "put your hands behind your back" while Plaintiff was screaming that he couldn't because of the dog, and they need to pull the dog off.

- Plaintiff required many stitches.

- Pierce had no warrant to search the Cantrell's home.

- Pierce knew from the clothing and physical appearance that Keltner was the only legitimate suspect in the house.

- Pierce knew from the dog's behavior that Keltner was the fleeing party.

- Pierce knew from the dog's behavior as well as clothing and physical appearance that Plaintiff was not a person that he could constitutionally search, arrest, or assault.

- Pierce knew or should have know that he had no constitutionally sufficient grounds to enter the bathroom where Plaintiff was at.

- Plaintiff had Super Bear Jaw folding pliers, a knife, and a flashlight, all of which were taken from his person and not returned.

See Dkt. # 1.

With respect to the City of Tulsa, Plaintiff alleges that the City failed to adequately train Pierce and its other officers; that the City failed to train, supervise, and discipline its offers to prevent constitutional violations; that the City never punished, disciplined, or forbade Pierce to repeat his conduct; and that the City has established a defacto pattern, practice and custom of violating the constitutional rights of the people. See Dkt. # 1. In response to the complaint, Defendant City of Tulsa filed an answer (Dkt. # 24), and Defendant Pierce filed a motion to dismiss or, in the alternative, motion for qualified immunity (Dkt. # 25). Plaintiff filed a response (Dkt. # 29) to Defendant Pierce's dispositive motion. Defendant Pierce filed a reply (Dkt. # 31).

### *UNCONTROVERTED FACTS*

Defendant Pierce cites evidence in the special report (Dkt. # 23) to set forth the following facts showing that he is entitled to summary judgment in his favor and against Plaintiff on all four counts in the Complaint. Plaintiff fails to controvert these facts in a manner recognized by Fed. R. Civ. P. 56(c).

On December 14, 2009, Tulsa police officers attempted to stop a suspect, Rexx Keltner, but the suspect fled. Dkt. # 23 at 12, 36.[1] Pierce engaged in a vehicular pursuit of Keltner followed by a foot chase. Id. Keltner ran into a house where Plaintiff was present as a visitor. Id. In the front room of the residence, Officers found several knives along with a machete. Id. at 36. When attempting to secure the residence, Pierce along with his K-9 partner, P.D., discovered Plaintiff in a bathroom with the door closed -- Plaintiff refused to come out. Id. at 12, 36. Both Keltner and Plaintiff were wearing black jackets and jeans. Id. at 12-14, 36. Based upon the clothing he was wearing, Officer Pierce believed Plaintiff to be Keltner. Dkt. # 23 at 36. Plaintiff was "protesting" that he should not be arrested, making gestures with his hands. Dkt. # 23 at 36; Dkt. # 1, ¶ 15. Pierce then ordered Plaintiff to show his hands and to come out of the bathroom or he would release the dog. Dkt. # 23 at 36. When Plaintiff failed to comply, and again started making hand motions and reaching into his pockets, Pierce once again warned Plaintiff that if he did not show his hands and come out of the bathroom, Pierce would release P.D. Id. at 12, 36. When Plaintiff again failed to comply, Pierce released P.D. into the bathroom. Id. P.D. grabbed Plaintiff by the leg. Id. In

---

[1] Keltner was suspected of involvement with a methamphetamine lab at his residence and driving a vehicle with a license tag registered to another vehicle. He also had previous convictions for robbery, larceny, manufacture and possession of dangerous drugs (methamphetamine), as well as weapons offenses. Dkt. # 23 at 12.

response, Plaintiff grabbed the dog by the neck, raised him off of the ground, attempting to choke him. Id. at 12, 36. The dog then nipped (bit) Plaintiff on the chin, causing Plaintiff to release his hold on the dog. P.D. then grabbed Plaintiff by his right thigh and, once again, Plaintiff grabbed the dog by the neck. Id. at 36. Plaintiff succeeded in pulling the dog from his thigh and again raised the dog off of the ground holding him by the neck. Id. In response, the dog grabbed Plaintiff by his left arm. Id. At this point, Pierce and other officers were able to take Plaintiff to the ground and handcuff him after a brief struggle. Id. at 12, 36.

At the time, Plaintiff appeared to be armed and, in fact, Plaintiff acknowledges that he was armed with a knife, pliers, and a flashlight. Id. at 12; Dkt. # 1 at ¶ 37. Plaintiff does not allege that Pierce took these items. See Dkt. # 1. Plaintiff also had drugs and drug paraphernalia on his person at the time of his arrest. Dkt. # 23 at 14, 36.

Prior to being transported to booking at David L. Moss Criminal Justice Center, the facility serving as the Tulsa County Jail, Plaintiff was taken to OSU Medical Center to be treated for dog bites. Dkt. # 23 at 36. Photographs of the bite wounds were taken by Detective Mark Robinson. Id. at 36, 37-43.

*APPLICABLE LAW*

**A.    Summary Judgment Standards**

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Thomas v. Metropolitan Life Ins. Co., 631 F.3d 1153, 1160 (10th Cir. 2011). When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. Thomas, 631 F.3d at 1160. "However, the nonmoving party may

not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Id.  The mere existence of an alleged factual dispute, however, does not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).  Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Id.  Conclusory or self-serving affidavits are not sufficient. Id.  If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law.  See Anderson, 477 U.S. at 250.   "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." Thomas,  631 F.3d at 1160 (internal quotation marks and citation omitted).  When reviewing a motion for summary judgment it is not the judge's function to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

Where a *pro se* plaintiff is a prisoner, a court authorized "Martinez Report" (Special Report) prepared by prison officials may be necessary to aid the court in determining possible legal bases for relief for unartfully drawn complaints.  See Hall, 935 F.2d at 1109.  On summary judgment, the court may treat the Martinez Report as an affidavit, but may not accept the factual findings of the report if the plaintiff has presented conflicting evidence. Id. at 1111.  This process is designed to aid the court in fleshing out possible legal bases of relief from unartfully drawn *pro se* prisoner complaints, not to resolve material factual disputes.  The plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge.

7

Id.² The court must also construe a plaintiff's *pro se* pleadings liberally for purposes of summary judgment. Haines v. Kerner, 404 U.S. 519, 520 (1972).

**B.    Qualified Immunity**

As indicated above, Officer Pierce asserts a defense of qualified immunity to all claims against him. The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "This defense shields government officials performing discretionary functions from liability 'if their conduct does not violate clearly established rights of which a reasonable government official would have known.'" Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006)(quoting Perez v. Unified Gov't of Wyandotte County/Kansas City, Kan., 432 F.3d 1163, 1165 (10th Cir. 2005)). Previously, a court was to apply a "two-step process" to determine whether "a defendant is entitled to qualified immunity." Graves, 450 F.3d at 1218 (noting that the two-step process entailed first, determining "whether Plaintiffs have asserted a violation of a constitutional right at all" and second, "whether that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right") (further quotations omitted). See Saucier v. Katz, 533 U.S. 194, 201 (2001) (holding that the "threshold question" of whether "the officer's conduct violated a constitutional right . . . must be the initial inquiry"). However, the United States Supreme Court recently altered that analysis, holding that courts no longer must decide qualified immunity

---

²Plaintiff's Complaint (Dkt. # 1) is not sworn under penalty of perjury, and thus, it will not be treated as an affidavit. Moreover, even if it were treated as an affidavit, Plaintiff still has not alleged facts sufficient to defeat summary judgment.

8

based upon the sequence required by Saucier. See Pearson v. Callahan, 555 U.S. 223, 227 (2009) (holding "that the Saucier procedure should not be regarded as an inflexible requirement and that [defendants may be] entitled to qualified immunity on the ground that it was not clearly established at the time of the search that their conduct was unconstitutional."). As the Supreme Court noted, "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." Id. at 239. Thus, courts now "have the discretion to decide whether [the Saucier two-step sequence] is worthwhile in particular cases." Id. at 242.

"In rebutting a qualified immunity claim at the summary judgment level, a plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)." Axson-Flynn v. Johnson, 356 F.3d 1277, 1299 (10th Cir. 2004) (internal citation and quotation marks omitted). "Once the plaintiff makes this showing, the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. at 1299-1300. "More specifically, the defendant must show that there are no material factual disputes as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." Id. at 1300. "At all times during this analysis, we evaluate the evidence in the light most favorable to the nonmoving party." Id.

**C.     Excessive Use of Force**

A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [her] person ... [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." Graham v. Connor, 490 U.S. 386, 388 (1989). As the Supreme Court explained in Graham, "[b]ecause [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (internal citation and quotations omitted); see also Cordova v. Aragon, 569 F.3d 1183, 1188 (10th Cir. 2009); Weigel v. Broad, 544 F.3d 1143, 1151 (10th Cir. 2008). In determining reasonableness, a Court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. Reasonableness "must be judged from the perspective of a reasonable officer on the scene," who is "often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 396-97.

### D.    Illegal Search and Seizure

Under the Fourth Amendment, a warrantless arrest is permissible if there is "probable cause to believe that the arrestee committed a crime." Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998) (citing Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)). "Probable Cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonable trustworthy information are sufficient to lead a prudent person to believe that the arrestee

10

has committed or is committing an offense." Romero, 45 F.3d at 1476 (quoting Jones v. City & County of Denver, 854 F.2d 1206, 1210 (10th Cir. 1988)). Under the qualified immunity standard, an officer effecting a warrantless arrest is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." Romero, 45 F.3d at 1476 (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). Law enforcement officials who mistakenly conclude that probable cause exists are still entitled to qualified immunity if their conclusion is reasonable. Id. Also, "[u]nder the search incident to arrest exception [to the Fourth Amendment's warrant requirement], a police officer, incident to an arrest, may search a person." Lavicky v. Burnett, 758 F.2d 468, 474 (10th Cir. 1985).

**E.     Municipal Liability**

Plaintiff alleges the City of Tulsa failed adequately train, supervise or discipline Pierce and its other officers to prevent constitutional violations; that the City never punished, disciplined, or forbade Pierce to repeat his conduct; and that the City has established a defacto pattern, practice and custom of violating the constitutional rights of the people. As a municipality, the City of Tulsa will not be held liable under § 1983 solely because its employees inflicted injury. Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 694 (1978). Rather, to establish municipal liability, a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). In addition, a municipality may not be held liable for monetary damages where there was no underlying constitutional violation by any of its officers. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

*ANALYSIS*

With respect to Plaintiff's claim that Pierce used excessive force and Pierce's defense of qualified immunity, the issue here is whether the actions of Defendant Pierce were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. See Graham, 490 U.S. at 397. Plaintiff has failed to present any evidence controverting Defendant Pierce's averment that he acted reasonably in effecting Plaintiff's arrest. It is uncontroverted that Plaintiff was wearing similar clothing to Keltner on the day of his arrest and that Pierce believed Plaintiff to be Keltner. Plaintiff does not controvert that he appeared armed. In fact, he admits that he was in fact armed at the time. It is undisputed that Plaintiff refused to exit the bathroom, refused to show Pierce his hands, and was repeatedly warned that if he did not do those things, the dog would be released. It is undisputed that Plaintiff was physically aggressive with the dog and that he continued to struggle even after Officer Pierce gained access to the bathroom and attempted to handcuff Plaintiff. Upon consideration of the record, the Court finds that Plaintiff has failed to bring forth sufficient facts to establish that Defendant Pierce used excessive force to effect his arrest in violation of the Fourth Amendment. Because there was no constitutional violation, the Court need not address whether the constitutional right at issue was clearly established. Defendant Pierce has shown that there is no genuine dispute as to any material fact that he is entitled to qualified immunity on Plaintiff's excessive use of force claim (Count I), and that Defendant is entitled to judgment as a matter of law on this claim.

Next, with regard to Plaintiff's claim that he was subjected to an unreasonable search and seizure in violation of the Fourth Amendment and Defendant's asserted qualified immunity defense, the question is whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff. Romero, 45 F.3d at 1476. Herein, Officer Pierce and his K-9 partner were involved

in a vehicle pursuit followed by a foot chase. He observed the driver of the vehicle being pursued abandon the vehicle and attempt to escape arrest by retreating into a house. Upon entry into the house, Officer Pierce was faced with trying to identify and segregate the vehicle pursuit suspect from the other occupants of the residence. While performing a protective sweep of the residence he came upon a closed bathroom door. Officer Pierce was able to force open the door enough to observe Plaintiff, the occupant of the bathroom. Again, it is undisputed that the clothing worn by Plaintiff matched the description of clothing of the vehicle pursuit suspect Pierce had followed into the residence. Plaintiff does not controvert that he appeared armed and was in fact armed.  Pierce repeatedly warned Plaintiff at least twice that if he did not come out with his hands where he could see them Pierce would have to release the dog. Plaintiff continued to make movements with his hands and failed to comply with the order to come out of the bathroom. Only then did Officer Pierce, release the dog. The dog was subsequently assaulted by Plaintiff, who continued to fight and struggle with the dog and with officers in an attempt to avoid arrest. Plaintiff was taken into custody only after a struggle with the K-9 and two uniformed officers. A search of Plaintiff revealed narcotics on his person. Officer Pierce's actions were  reasonable. Although, it is now clear that Plaintiff was not the driver of the vehicle involved in the pursuit, under the circumstances here, a reasonable officer would believe that by hiding in the bathroom and in failing to follow repeated commands to show his hands and exit the room, Plaintiff represented a threat to the safety of Officer Pierce and the other officers present.  In this situation, a reasonable officer would have concluded that probable cause existed to arrest Plaintiff. See Romero, 45 F.3d at 1476. It was only after Plaintiff refused to comply with Officer Pierce's directions and physically attacked the dog that he was handcuffed and his person searched incident to his arrest revealing illegal drugs.  Because

Plaintiff's warrantless arrest was constitutionally permissible, so too was the contemporaneous search of his person for weapons and evidence. See Lavicky, 758 F.2d at 474. Upon consideration of the record, the Court finds that Plaintiff has failed to bring forth sufficient facts to establish that he was subject to an unreasonable search and seizure in violation of the Fourth Amendment. Because there was no constitutional violation, the Court need not address whether the constitutional right at issue was clearly established. Defendant Pierce has shown that there is no genuine dispute as to any material fact that he is entitled to qualified immunity on Plaintiff's unreasonable search and seizure claim (Count II), and that Defendant is entitled to judgment as a matter of law on this claim.

With respect to the claims against the City of Tulsa, it is well-settled that in an action for damages, a municipality cannot be liable when none of its officers committed a constitutional violation. See Heller, 475 U.S. at 799.  Moreover, Plaintiff has provided no evidence supporting the existence any municipal policy or custom that resulted in any constitutional injury to Plaintiff. See Harris, 489 U.S. at 385. Because Pierce committed no constitutional violation, Plaintiff's § 1983 claims against the City in Counts I and II cannot survive summary judgment.

Because Plaintiff's constitutional claims do not survive summary judgment, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law tort claims (Counts III and IV).  See 28 U.S.C. § 1367(c)(3); see also Brooks v. Gaensle, 614 F.3d 1213, 1229 (10th Cir. 2010) (recognizing that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice). As such, Plaintiff's state law tort claims shall be dismissed without prejudice.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Defendant Pierce's motion to dismiss, or in the alternative for qualified immunity (Dkt. # 25), adjudicated as a motion for summary judgment, is **granted**.

2. Summary judgment is granted for the City of Tulsa.

3. Plaintiff's state law tort claims are dismissed without prejudice.

4. A separate judgment shall be entered in this matter.

DATED THIS 15th day of September, 2011.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma